IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dewey Derald Gullick, | No. CV 07-8131-PCT-JWS (HCE) |
| Petitioner, | **REPORT & RECOMMENDATION** |
| vs. | |
| Deputy Warden Bock; et. al., | |
| Respondents. | |

Pending before the Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for Report and Recommendation. For the following reasons the Magistrate Judge recommends that the District Court dismiss the Petition for Writ of Habeas Corpus as untimely.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    State Proceedings

### 1.    Indictment and Conviction

"The Navajo County Grand Jury's return of three separate indictments against Petitioner set in motion the events that culminated in the 25-year prison term that Petitioner is currently serving in the Arizona Department of Corrections." (Answer, p.2) (Doc.No. 16). The first indictment, dated August 28, 2001, charged Petitioner in CR 2001-0552 with six crimes against three children. (Answer, pp. 2-3 & Exh. A). Counts One, Two and Three

charged Petitioner with committing Aggravated Assault, class 2 felonies and dangerous crimes against children under the age of 15, by pointing a rifle at Rhonda A. (Count One), Bonnie G. (Count Two), and Jason G. (Count Three). (Answer, p.3 & Exh. A). Counts Four through Six alleged: (1) Sexual Conduct With A Minor, a class 6 felony, which Petitioner committed sometime in October or November 1992 by penetrating Rhonda's vagina with his penis when Rhonda was 14 years of age (Count Four); (2) Sexual Assault, a class 2 felony and dangerous crime against children, when, sometime between January 1, 1992 and May 31, 1992, Petitioner forced Rhonda to have oral sexual contact with his penis (Count Five); and (3) Continuous Sexual Abuse Of A Child, a class 2 felony and dangerous crime against children, which Petitioner committed against Bonnie G. between January 1, 1993 and December 31, 1994 (Count Six). (Answer, Exh. A).

Two weeks later, on September 11, 2001, the Navajo County Grand Jury returned its second indictment against Petitioner, charging Petitioner in CR 2001-0574 with two counts of Sexual Abuse, class 3 felonies and dangerous crimes against children, based upon his acts of touching the breasts of two children under the age of 15, S.W. (Count One) and J.G. (Count Two), sometime in May 2000. (Answer, Exh. C).

On September 18, 2001, the Navajo County Grand Jury returned its third indictment against Petitioner, charging Petitioner in CR 2001-595 with one count of Sexual Abuse, a class 5 felony, which Petitioner committed on August 17, 1998 by causing Melinda S., a person of 15 years of age or more, to have indirect contact with Petitioner's genitals. (Answer, Exh. C).

On March 1, 2002, Petitioner entered into a "universal plea agreement with the State to resolve all three cases against him." (Answer, p.4; *see also* Answer, Exh. D). Petitioner entered a guilty plea to committing sexual assault against Rhonda, Count Five in CR 2001-552, in exchange for the State's dismissal of the remaining five counts in that cause number, as well as the three counts collectively charged in CR 2001-574 and CR 2001-595. (Answer, p.4 & Exh. D, E). The plea agreement specified in pertinent part that:

> The crime of Sexual Assault, A CLASS 2 FELONY DANGEROUS CRIME AGAINST A CHILD carries a presumptive sentence of <u>20</u> years imprisonment..., a minimum sentence of <u>15</u> years, and a maximum sentence of <u>25</u> years. Probation is not available. The Defendant is not eligible for release until the entire sentence is served except as authorized by 31-233 section A or B.

(Answer, Exh. D, pp.1-2) (capitalization and underline in original). "The parties reached no agreement as to sentencing, which afforded the trial court discretion to impose any prison term within the range of 15 and 25 years." (Answer, p.4). On April 30, 2002, the trial court sentenced Petitioner to prison for the maximum aggravated term of 25 years. (Answer, Exh. F).

### 2. Post-Conviction Relief Proceedings

#### a. Of-Right Proceeding

On June 7, 2002, Petitioner filed a timely *pro se* notice of post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure and, thereafter, Petitioner's retained counsel successfully moved to withdraw and the trial court appointed counsel to represent Petitioner. (Answer, p.4 & Exh. G, H, I). On November 4, 2003, Petitioner's counsel filed a "Notice of Completion Pursuant to Rule 32 and Motion for Extension of Time for Filing of Pro-Per Petition," wherein counsel stated that she had reviewed the record, had found no grounds for relief pursuant to Rule 32, and requested additional time for Petitioner to file a *pro se* petition for post-conviction relief. (Answer, Exh. J). The trial court granted counsel's request and extended the filing deadline until February 27, 2004, to enable Petitioner to file a *pro se* petition. (Answer, Exh. K).

On February 26, 2004, Petitioner filed his *pro se* Petition for Post-Conviction Relief (hereinafter "of-right PCR Petition"[1]) . (Answer, Exh. L). Petitioner raised the following claims in his of-right PCR Petition:

---

[1] *See Summers v. Schriro,* 481 F.3d 710, 716-17 (9th Cir. 2007) (using the term "Rule 32 of-right proceedings..." to refer to the initial post-conviction relief proceeding filed in lieu of a direct appeal by an Arizona defendant, like Petitioner herein, who has pled guilty). *See also* discussion, *infra,* at II.A.

1.      Petitioner's trial attorney rendered ineffective assistance of counsel;

2.      The trial court misapplied A.R.S. 13-604.01 and Arizona sentencing precedent when it imposed Petitioner's sentence; and

3.      "Partiality of Judge. Official missconduct [sic]" when the trial court: (a) considered the report that Dr. Gray prepared prior to sentencing; (b) in imposing sentence, "reflect[ed] on the trauma suffered by the victim"; and (c) improperly considered Petitioner's misdemeanor conviction for statutory rape as an aggravating circumstance.

(*Id.*; *see also,* Answer, Exh. M, N).

After the matter was fully briefed, the trial court set an evidentiary hearing to address Petitioner's claim of ineffective assistance of counsel. (Answer, Exh. O). The evidentiary hearing lasted three days and concluded on October 5, 2004. (Answer, Exh. P, Q, R, S, T, U). Upon conclusion of the hearing on October 5, 2004, the trial court held that defense counsel's performance was not deficient, found the remaining two claims were groundless, and denied Petitioner's of-right PCR Petition in its entirety. (Answer, Exh. T, U at pp. 69-72).

Although the trial court denied Petitioner's motion to extend time in which to file a timely petition for review, the Arizona Court of Appeals granted Petitioner's request for same and ordered Petitioner to file his petition for review on or before January 14, 2005. (Answer, Exh. V, W). On April 8, 2005, the appellate court dismissed the matter because Petitioner neither filed his petition for review nor requested to extend the January 14, 2005 filing deadline. (Answer, Exh. X ("To date, the court has received neither a complaint petition for review nor a request for extension of time.")). Respondents submit the affidavit of Philip Urry, Clerk for Division One of the Arizona Court of Appeals wherein Mr. Urry indicates that court records reflect that after the April 8, 2005 dismissal of his action, Petitioner "filed no subsequent pleadings or documents..." in that cause number and the court "closed its file in that case on May 23, 2005." (Answer, Exh. SS, ¶5).

b.     Second PCR Proceeding

On May 13, 2005,[2] Petitioner filed with the trial court a *pro se* "Motion to Correct Unconstitutional and Unlawful Sentence" (hereinafter "Second PCR Petition") wherein he argued that his sentence violated several Arizona constitutional provisions, the Sixth and Fourteenth Amendments of the United States Constitution, and several United States Supreme Court decisions including *United States v. Booker,* 543 U.S. 220 (2005), *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466 (2000). (Answer, Exh. Y).

On July 29, 2005, the trial court denied relief finding that:

> the United States Supreme Court opinion of *Blakely v. Washington,* 124 S.Ct. 1026 [sic](2004), was decided on June 24, 2004. This Court ruled on the first Rule 32 Petition on October 5, 2004 after conducting an evidentiary hearing. At no time during the course of the first Rule 32 proceedings did the defendant raise the *Blakely* issue. Therefore, because *Blakely* had been decided prior to the completion of the first Rule 32 proceeding, the defendant is precluded from raising a *Blakely* claim in a second Rule 32 petition pursuant to Rule 32.2(a)(3).

(Answer, Exh. AA).

Pursuant to Rule 32.9 of the Arizona Rules of Criminal Procedure, Petitioner had 30 days from the trial court's denial of his Second PCR Petition to file a petition for review with the Arizona Court of Appeals. On August 24, 2005, Petitioner requested that the trial court grant an extension of time to file a petition for review. (Answer, Exh. BB). Concluding that Petitioner failed to set forth sufficient reasons to justify an extension, the trial court denied Petitioner's request on September 9, 2005. (Answer, Exh. CC).

Although Petitioner's request for extension was denied, he nonetheless submitted to the Court of Appeals a petition for review wherein he argued that: (1) the trial court

---

[2]Petitioner's motion initiating his second PCR proceeding was signed on May 13, 2005 and filed with the trial court on May 17, 2005. (Answer, Exh. Y). In compliance with state law, Respondents cite May 13, 2005 as the date on which the motion is deemed filed. (*See* Answer, p. 7); *see also State v. Rosario,* 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Goracke,* 210 Ariz. 20, 22-23 & n.3, 106 P.3d 1035, 1037-38 & n.3 (App. 2005). *Cf. Houston v. Lack,* 487 U.S. 266, 270-71 (1988).

improperly precluded the *Blakely* claim; and (2) the trial court's sentence was the product of improper application of A.R.S. §13-702(C) and violated the double jeopardy clauses of the federal and Arizona constitutions.[3]  (Answer, Exh. FF).  Petitioner signed the petition for review on September 29, 2005.  The petition for review bears stamp marks indicating that it was "received" by the appellate court on October 4, 2005 and "filed" by the Clerk of the Arizona Court of Appeals on October 19, 2005.  (Answer, Exh. FF (capitalization omitted)).

On September 13, 2006, the Arizona court of Appeals denied review without comment.  (Answer, Exh. GG).   Petitioner made no further filings, such as a petition for review to the Arizona Supreme Court, with regard this matter.  (Answer, p.10 (*citing* Answer, Exh. SS at ¶6)).

### c.  Petitioner's Third PCR Proceeding

On September 20, 2005, Petitioner filed a notice of post-conviction relief (hereinafter "Third PCR Petition") wherein he contended that his absence during the grand jury proceedings violated *Crawford v. Washington,* 541 U.S. 36 (2004).  (Answer, Exh. DD). On October 17, 2005, the trial court denied relief finding that the notice of post-conviction relief was untimely filed.  (Answer, Exh. EE).

Petitioner did not seek review from either the Arizona Court of Appeals or the Arizona Supreme Court with regard to his Third PCR Petition.  (*See* Answer, Exh. SS.  *See also supra,* at n.3).

### d.  Petitioner's Fourth PCR Proceeding

On March 15, 2006, Petitioner filed a notice of post-conviction relief (hereinafter "Fourth PCR Petition").  (Petition, p.5A; Answer, p.10).  Petitioner's Fourth PCR Petition has not been made part of the record because "Respondents' file does not contain a copy..."

---

[3]Citing the October 19, 2005 filing date of Petitioner's petition for review, Respondents maintain that Petitioner sought review of the trial court's October 17, 2005 order denying his Third Petition for review discussed *infra,* at I.2.c.  (*See* Answer, p.9) However, that cannot be the case given that the petition for review was signed by Petitioner and received by the appellate court before the trial court entered its ruling on Petitioner's Third PCR Petition.

(Answer, p.10).  Respondents contend that according to their response to the Fourth PCR Petition, Petitioner alleged that he was entitled to post-conviction relief based upon the following claims:

1.    He was improperly sentenced;

2.    The trial court considered false and misleading information at sentencing;

3.    Petitioner's attorneys engaged in malfeasance;

4.    The prosecutors engaged in malfeasance;

5.    Trial counsel failed to investigate all available defenses;

6.    The trial court engaged in malfeasance;

7.    The indictment was duplicitous; and

8.    Petitioner was illegally sentenced under A.R.S. 13-604.01.

(Answer, Exh. HH; *see also* Petition, p.5A[4]).

On April 3, 2006, the trial court denied relief because the matter was untimely filed. (Answer, Exh. II).

On May 1, 2006, Petitioner filed a "Petition for Special Action" in the Court of Appeals arguing that he had filed in the trial court a "'Motion for Leave to File Untimely Petition for Post-Conviction Relief for Good Cause' but the state convinced the trial court this was actually a fourth and untimely 'notice'..." and, thus, the state trial court's ruling was erroneous.  (Answer, Exh. JJ, pp.2-3).

On May 12, 2006, the appellate court directed the clerk to redocket Petitioner's Special Action matter as a petition for review from the trial court's denial of post-conviction relief.  (Answer, Exh. KK).  On May 23, 2007, the appellate court summarily denied review. (Answer, Exh. LL).

---

[4]Petitioner's summary of the claims raised in his Fourth PCR Petition is consistent with Respondents' summary set forth in their Answer.  (*See* Petition, p.5A).

Petitioner made no further filings, such as a petition for review to the Arizona Supreme Court, with regard to his Fourth PCR Petition. (Answer, p.12 (*citing* Answer, Exh. SS at ¶7)).

e.    Petitioner's Fifth PCR Proceeding

On April 2, 2007, Petitioner filed in the trial court a pleading captioned "Motion for Clarification of Sentence" wherein he sought an explanation why he had been sentenced pursuant to A.R.S. § 13-604.01, the sentencing statute governing "Dangerous Crimes Against Children" (hereinafter "Fifth PCR Petition"). (Answer, Exh. MM). On April 23, 2007, the State filed its response asserting that the motion was essentially a fifth PCR petition and was untimely and precluded under Arizona Rules of Criminal Procedure. (Answer, Exh. NN). On April 24, 2007, the trial court entered an order stating: "Motion to clarify sentence is denied." (Answer, Exh. OO). Thereafter, the State moved the trial court to sign the State's previously proposed form of order submitted with its April 23, 2007 response to Petitioner's motion. (Answer, Exh. PP). On May 21, 2007, the trial court signed the State's proposed order wherein, *inter alia,* the court stated that: (1) Petitioner's motion was treated as a fifth PCR petition; (2) Petitioner's motion was untimely, and, alternatively, was precluded under Rules 32(a)(2) and 32(a)(3) of the Arizona Rules of Criminal Procedure; and (3) the motion was dismissed. (Answer, Exh. QQ).

On May 3, 2007, Petitioner bypassed the Arizona Court of Appeals by filing in the Arizona Supreme Court a petition for special action seeking review of the trial court's denial of his "Motion to Clarify Sentence", *i.e.,* his Fifth PCR Petition. (Petition, Exh. B(II); Answer, Exh. RR; Answer, p.13 (*citing* Answer, Exh. SS at ¶8)). On June 5, 2007, the Arizona Supreme Court dismissed Petitioner's special action as follows:

> Dewey Gullick has filed a Petition for Special Action seeking review of the [S]uperior [C]ourt's order denying his "Motion to Clarify Sentence" on April 24, 2007. Petitioner fails to set forth sufficient reasons for filing the petition initially in this Court instead of the Court of Appeals. See Rule 7(b), Rules of Procedure for Special actions. Therefore,
> IT IS ORDERED that the Petition for Special Action is dismissed.

(Answer, Exh. RR).

After the Arizona Supreme Court's dismissal of Petitioner's Special Action, Petitioner did not file any pleading in the Arizona Court of Appeals to seek appellate review of the trial court's dismissal of his motion, which the trial court construed as a Fifth PCR Petition. (Answer, p.14 (*citing* Answer, Exh. SS at ¶8)).

B.    Petitioner's Federal Petition for Writ of Habeas Corpus

The instant *pro se* Petition for federal habeas relief was signed by Petitioner on November 18, 2007 and filed-stamped by the Clerk of the Court on November 19, 2007. (Doc. No. 1). A federal habeas petition is deemed filed when handed by the inmate to a prison official for mailing. *See Houston,* 487 U.S. at 270-71; *Patterson v. Stewart,* 251 F.3d 1243, 1245 n.2 (9th Cir. 2001) ("Under the prison 'mailbox rule'...a *pro se* petitioner's petition is deemed constructively filed at the moment it is delivered to prison officials to be forwarded to the court clerk.") The Court deems the Petition commencing this action as filed on November 18, 2007. *See id.*

Petitioner raises the following grounds for relief:

1.    Petitioner's conviction or sentence violated the Sixth Amendment due to ineffective assistance of counsel because counsel: (a) promised Petitioner he would only have to serve 15 years if he accepted the plea agreement thus rendering Petitioner's plea unknowing and involuntary; (b) failed to present mitigating evidence at sentencing such as that Petitioner suffered from "post-traumatic syndrome [sic] disorder (P.T.S.D.) " or that he was emotionally abused as a child; (c) failed to corroborate Petitioner's mental and physical health problems; (d) failed to challenge the statement expressed in the pre-sentence report characterizing Petitioner as a "predator"; and (e) failed to challenge the assertion in the pre-sentence report that Petitioner had molested "'two young girls' and a co-worker";

2.    The trial court's imposition of a 25-year prison term violated the Fourteenth Amendment because the version of A.R.S. §13-604.01 that applied to

Petitioner provided a maximum sentence of 15 years of imprisonment for sexual assault;

3. The trial court violated the Fourteenth Amendment by improperly sentencing Petitioner when the court: (a) considered a report from Dr. Gray prepared pursuant to Ariz.R.Crim.P. 26.5; (b) considered Petitioner's prior misdemeanor conviction for second-degree rape; and (c) did not allow Petitioner to call an expert to rebut Dr. Gray's report;

4. Petitioner's sentence violated Petitioner's Sixth Amendment rights under *Blakely v. Washington,* 542 U.S. 296 (2004) because a jury did not determine all of the aggravating circumstances enumerated by the court at sentencing; and

5. Petitioner's sentence violated Petitioner's Sixth Amendment rights under *Apprendi v. New Jersey,* 530 U.S. 466 (2000) because a jury did not determine all of the aggravating circumstances enumerated by the court at sentencing.

(Petition).

Respondents filed their Answer (Doc. No. 16) on June 13, 2008.

On July 9, 2008, Petitioner filed his Reply wherein he asserted, *inter alia,* that he "was in and out of mental treatment from January 5, 2005, 2006, 2007 and currently in 2008..." (Reply, p.2 (Doc. No. 17)). In light of this assertion, the Court informed Petitioner on July 14, 2008 that more specific information was required and directed Petitioner to file a Supplemental Reply stating the specific dates of treatment and type of treatment on such dates, type of medication Petitioner took, and documentation to support Petitioner's statements concerning treatment. (Doc. No. 18). Respondents were granted leave to file a Surreply. (*Id.*).

On August 8, 2008, Petitioner requested an extension of time to file his Supplemental Reply (Doc. No. 19) and on August 20, 2008 he filed various documents and records which he attached to this Court's July 14, 2008 Order directing him to file a Supplemental Reply (Doc. No. 20). On August 22, 2008, the Court granted Petitioner's request for an extension

to the extent that the Court accepted Petitioner's August 20, 2008 Supplemental Response as timely filed. (Doc. No. 21).

On August 29, 2008, Respondents filed their Surreply (Doc. No. 22).

## II.    DISCUSSION

Respondents argue that the Petition is time-barred under the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA").  (Answer; Surreply) Alternatively, Respondents argue that all of Petitioner's claims are procedurally defaulted. (Answer).

Petitioner contends that his Petition is timely under either 28 U.S.C. §2244(d)(2) or the doctrine of equitable tolling. (Reply).  He also argues that his claims are not procedurally defaulted. (*Id.*).

### A.    Commencement of AEDPA Statute of Limitations

The "AEDPA imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Patterson,* 251 F.3d at 1245 (citing 28 U.S.C. § 2244(d)(1)) (footnote omitted).  Pursuant to section 2244, the limitations period:

> shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Of the possible starting date, only section 2244(d)(1)(A) is relevant to the instant action.  Petitioner does not suggest an alternative calculation of the commencement date of the AEDPA limitations period.  Nor does Petitioner assert: (1) that he was impeded from filing his federal habeas petition due to state action in violation of the Constitution or laws of the United States; (2) a newly-recognized right; or (3) that his Petition is predicated on

newly-discovered facts that could not have been discovered earlier through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

For Arizona petitioners who enter a guilty plea, like Petitioner herein, a petition for post-conviction relief filed under Rule 32 of the Arizona Rules of Criminal Procedure, in lieu of a direct appeal, is considered a form of "direct review" within the meaning of 28 U.S.C. §2244(d)(1). *See Summers,* 481 F.3d at 711, 716-17 (referring to such post-conviction relief proceedings as "Rule 32 of-right proceeding[s]..." and concluding that "[b]ecause a Rule 32 of-right proceeding is a form of direct review, AEDPA's one year statute of limitations does not begin to run until the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of the time for seeking such proceeding or review."); *see also* 28 U.S.C. §2244(d)(1)(A) (stating that the judgment becomes final at the later of either the conclusion of direct review or the expiration of time for seeking such review).

Petitioner was granted an extension until January 14, 2005 to file his of-right PCR Petition. (Answer, Exh. W). Petitioner never filed a petition for appellate court review, nor did he request a further extension of the time do so. Therefore, Petitioner's conviction became final on January 14, 2005,[5] when his opportunity to petition the Arizona Court of Appeals for review expired. *See Id.* This determination is not altered by the fact that direct review is not normally complete until the time for filing a petition for a writ of *certiorari* to

---

[5]Respondents maintain that the conviction became final on April 8, 2005 when the appellate court dismissed Petitioner's appellate matter "because of his failure to file a petition for review on or before the prescribed extended deadline (January 14, 2005)." (Answer, pp. 17-18 (*citing* Answer, Exh. X)). However the law is clear that the conviction is final upon either "the conclusion of the Rule 32 of-right proceeding and review of that proceeding, *or until the expiration of the time for seeking such proceeding or review.*" *Summers,* 481 F.3d at 711 (emphasis added); *see also* 28 U.S.C. §2244(d)(1)(A) (the conviction becomes final "by the conclusion of direct review *or the expiration of the time for seeking such review.*"). In Petitioner's case, the time to seek review expired on January 14, 2005 and Petitioner did not avail himself of the opportunity to seek review before that deadline or at all. Moreover, even if Respondents' suggested date of April 8, 2005 was used as the date upon which Petitioner's conviction became final, the Petition is still time barred for the reasons stated in Respondents' Answer.

the United States Supreme Court has expired, *See Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir. 1999). *Certiorari* can only be sought following a decision or denial of discretionary review by the state court of last resort, *i.e.,* the Arizona Supreme Court. *See* Sup.Ct.R. 13. Because Petitioner did not seek discretionary review from the Arizona Supreme Court, the time for filing a petition for a writ of *certiorari* to the United States Supreme Court does not factor into the statute of limitations calculation herein. Consequently, Petitioner's conviction became final on January 14, 2005.

B.      Statutory Tolling

Under section 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under..." section 2244(d). 28 U.S.C. §2244(d)(2). However, "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of section 2244(d)(2)" and, thus, statutory tolling is not applicable. *Allen v. Siebert*, 552 U.S. 3, 5 (2007) (*citing Pace v. DiGuglielmo,* 544 U.S. 408, 414 (2005)). *See also Pace,* 544 U.S. at 414-17 (untimely action for post-conviction relief is not properly filed for purposes of section 2244(d)(2) and, therefore, does not statutorily toll the AEDPA limitations period). The Ninth Circuit has noted that:

> A petitioner must be careful to timely file in federal court after he concludes his first full round of state collateral review, lest he run afoul of the statute of limitations. To avoid that circumstance, a petitioner...could have timely filed a federal petition for habeas corpus after his first round was completed, then requested the district court to exercise its discretion to stay the petition until he fully exhausted his Round Two claims. *See James v. Pliler,* 269 F.3d 1124, 1126-27 (9th Cir.2001).

*Biggs v. Duncan,* 339 F.3d 1045, 1048 n.2 (9th Cir. 2003).

On May 13, 2005 Petitioner filed a *pro se* "Motion to Correct Unconstitutional and Unlawful Sentence" which the trial court treated as a PCR petition filed pursuant to Ariz.R.Crim.P. 32 and denied on July 29, 2005. (Answer, Exh. Y, AA). Petitioner initially had thirty days to file a petition for review. *See* Ariz.R.Cr.P. 32.9. Petitioner did not file a timely petition for review. Instead, on August 24, 2005, Petitioner requested that the trial

court grant him an extension of time to file a petition for review and the trial court denied Petitioner's request on September 9, 2009. (Answer, Exh. BB, CC). Respondents point out that although Petitioner had previously successfully moved the Arizona Court of Appeals for an extension of time to file a petition for review from the trial court's denial of his of-right PCR Petition, Petitioner did not pursue this alternative avenue for obtaining an extension to seek appellate review of the denial of his Second PCR Petition. (*See* Answer, pp.18-19 (*citing* Answer, Exh. SS at ¶¶4-8)).

Even though Petitioner had not received leave to file an untimely petition for review, on September 29, 2005, Petitioner signed a petition for review which, *inter alia,* challenged the trial court's denial of his claim under *Blakely.* (Answer, Exh. FF). Petitioner had raised a *Blakely* claim in his Second PCR Petition. (*See* Answer, Exh. Y). On September 13, 2006, the Arizona Court of Appeals denied review without comment. (Answer, Exh. GG). With regard to statutory tolling under section 2244(d)(2), only an appeal that is timely will toll the statute of limitations for the time period between the lower court's adverse decision and the filing of a notice of appeal in the higher court. *See Evans v. Chavis,* 546 U.S. 189, 191 (2006). It is clear on the instant record that Petitioner's petition for review was untimely filed given that it was filed outside the 30 day time limit provided in Ariz.R.Crim.P. 32.9 and given that Petitioner's request for extension of this deadline had specifically been denied on September 9, 2005–twenty days before he filed his untimely petition for review. Because Petitioner failed to seek timely review by the Arizona Court of Appeals regarding the trial court's denial of his Second PCR Petition, the statute of limitations herein was tolled pursuant to section 2244(d)(2) until July 29, 2005–the date the trial court denied Petitioner's Second PCR Petition.[6] *See Id.*

---

[6]Even if Petitioner's untimely petition for review had statutorily tolled the limitations period, the instant Petition would still be untimely. This is so because, as discussed *infra*, Petitioner's subsequent PCR attempts did not toll the limitations period. Thus accounting for the 118 days that ran between the conclusion of Petitioner's of-right PCR proceeding and the filing of Petitioner's Second PCR Petition, Petitioner would have had 247 days from the appellate court's September 13, 2006 order denying review in which to file his federal habeas

Consequently, the statute of limitations commenced to run on January 15, 2005 and ran 118 days until the May 13, 2005 filing of Petitioner's Second PCR proceeding which then tolled the AEDPA limitations period until July 29, 2005. The statute of limitations commenced to run again on July 30, 2005 and, accounting for 118 days between January 15, 2005 and May 13, 2005, expired 247 days later on Monday, April 3, 2006[7] absent any subsequent tolling.

Beginning on September 20, 2005, Petitioner filed several subsequent petitions for post-conviction relief, *i.e.*, Petitioner's Third through Fifth PCR petitions. The trial court found these attempts at post-conviction relief to be untimely. (Answer, Exh. EE, II, QQ). Given the state court's finding that Petitioner's third through fifth attempts at post-conviction relief were untimely, such proceedings were not "properly filed" under section 2244(d)(2) and, thus, these proceedings do not qualify for statutory tolling. *See* 28 U.S.C. §2244(d)(2); *Allen,* 552 U.S. at 4 (because petitioner's "petition for state postconviction relief was rejected as untimely by the...[state] courts, it was not 'properly filed' under section 2244(d)(2)."); *Pace,* 544 U.S. at 416-17 (same). Consequently, the AEDPA statute of limitations expired on April 3, 2006. Petitioner filed his federal habeas petition over one year later on November 18, 2007.

### C. Equitable Tolling

Respondents argue that in light of the U.S. Supreme Court's decision in *Bowles v. Russell,* 551 U.S. 205 (2007), the AEDPA is not subject to equitable tolling. (*See* Answer, pp. 22-24; *see also* Surreply, pp. 11-15). The Ninth Circuit has acknowledged that the Supreme Court has never explicitly determined whether section 2244(d) allows for equitable

---

Petition. Pursuant to this calculation, the limitations period would have expired on May 21, 2007. Petitioner did not file the instant action until November 18, 2007.

[7]The actual deadline is Sunday, April 2, 2006. Because the deadline fell on a Sunday, the filing deadline is extended to the following Monday under Fed.R.Civ.P. 6(a). *See Patterson,* 251 F.3d 1243 (applying former verison of Fed.R.Civ.P. 6(a) to AEDPA).

tolling. *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009), *cert. denied,* __ U.S. __, __ S.Ct.__, 2009 WL 2058179 (Oct. 5, 2009).  However, the Ninth Circuit has specifically held that "*Bowles* did not invalidate equitable tolling of the AEDPA statute of limitations." *Waldron-Ramsey,* 556 F.3d at 1011 n.2.  Therefore equitable tolling remains viable for Petitioner herein.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418.  *See also Waldron-Ramsey,* 556 F.3d at 1011.  Additionally, "[a] petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence." *Bryant v. Arizona Attorney General,* 499 F.3d 1056, 1061 (9th Cir. 2007).  *See also Waldron-Ramsey,* 556 F.3d at 1011 (an external force must cause the untimeliness, and thus, mere oversight, miscalculation or negligence on the petitioner's part would preclude the application of equitable tolling).  The petitioner must also establish that the extraordinary circumstances asserted were, in fact, the reason why the federal habeas petition was untimely.  *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir. 2003).  "[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006).

Petitioner asserts that:

> from January 5, 2005, 2006, 2007[,] 2008, that I was being treated for severe post-traumatic stress disorder, and was not about to file my state appeals or federal habeas due to my illness, mentally.  That I relied on the other inmates to help me argue and write [sic] research of my legal case.

(Reply, Exh. 1).  Also, according to Petitioner, he

> relied on other people to help him file his *pro se* briefs in the state's court and now in the federal courts.  Petitioner claims that he relied on these individuals to know the Rules of Court and the correct filings of his petitions in the different courts in the state's courts.  Petitioner claims  that due to his mental treatment that he was not aware or knew about court deadlines, because of the drugs that he was taken [sic] in order to just function daily in his life.

(Reply, p.2). In response to the Court's Order requesting specific information regarding Petitioner's mental issues and treatment for same, Petitioner submitted approximately 37 pages of medical records with no further explanation. (*See* Doc. No. 20).

The Ninth Circuit has "held that a 'putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so 'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." *Laws v. Lamarque,* 351 F.3d 919, 923 (9th Cir. 2003) (*citing Calderon v. United States District Court (Kelly),* 163 F.3d 530, 541 (9th Cir. 1998), *overruled on other grounds by Woodford v. Garceau,* 538 U.S. 202, 206 (2003)). However, "[a] habeas petitioner's mental incompetence is not a *per se* reason to toll the statute of limitations for filing a federal habeas petition." *Brown v. McKee,* 232 F.Supp.2d 761, 767 (E.D. Mich. 2002). *See also Weisner v. Evans,* 2009 WL 3353452, *3 (N.D. Cal. Oct. 19, 2009) ("While *Laws* and *Kelly* permit equitable tolling for mental incompetence, they do not stand for the proposition that every mental illness automatically tolls the limitation period. Most mental illnesses are treatable, and with proper treatment many, if not most, sufferers are capable of managing their own affairs."). Instead, equitable tolling should be applied "[w]here a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline..." because his delay in such an instance "was caused by an 'extraordinary circumstance beyond [his] control'..." *Laws,* 351 F.3d at 923. *See also Gaston v. Palmer,* 417 F.3d 1030, 1034-35 (9th Cir. 2003) (petitioner failed to show causal connection sufficient for equitable tolling where he filed state habeas proceedings during relevant time period despite his alleged mental condition), *modified on other grounds,* 447 F.3d. 1165 (9th Cir. 2006), *cert. denied,* 549 U.S. 1134 (2007).

A chronological summary of the documents submitted by Petitioner reveal the following:

- • An undated Arizona Department of Corrections Mental Health Assessment form which Respondents "calculate...was prepared sometime in 2002 before

October 12th...."[8]  (Surreply, p.5 n.2).  The following information is indicated on the form: (1) Petitioner was diagnosed with "PTSD–Viet Nam" by the Veteran's Administration in Phoenix when he was 54 years of age; Petitioner takes Paxil and at least one other drug indicated in illegible writing for depression; when Petitioner was 46 years of age he attempted suicide by cutting his wrist; Petitioner consumed "1/5" hard liquor a day but he did not use drugs; Petitioner was physically abused by his father and step father until he was 13 years of age; Petitioner did not experience hallucinations, paranoia or mania; nor had he been placed in special education classes.

• A page from a May 16, 2002 Mental Health Assessment[9] completed by Jaime Jorquez, DSW, Mental Health Therapist, II.  The assessment indicates, *inter alia,* that Petitioner, did not exhibit: emotional problems while in jail or previous incarceration; current suicidal ideation; or serious episodes of depression.  His affect was normal, his mood was euthymic, his appearance was unremarkable, his hygiene was good, his speech was normal, and he was cooperative and alert.  DSW Jorquez indicated: "No Mental Health services needed at this time" and "MH=3."[10]  Illegible notations follow.

• A May 18, 2004 "S[erious] M[ental] I[llness] Determination/Mental Health Needs Summary" form completed by Rose M. Allinder, Ph.D., Psychologist

---

[8]To support their suggested date, Respondents point to the following: the form indicates that Petitioner was 56 years of age at the time of evaluation; he was born on October 12, 1945; and he was sentenced to prison on March 1, 2002.  (Surreply, p.5 n.2).

[9]The page submitted does not refer to Petitioner by name.  However, Petitioner submitted a Declaration from the prison Medical Record Librarian stating that the record was a true copy of a record relating to Petitioner.  (Doc. No. 20 (August 13, 2008 Declaration)).

[10]Based upon other records submitted by Petitioner, the Court interprets "MH=3" to mean that Petitioner was assessed a mental health score of 3.  (*See e.g.,* April 19, 2005 Mental Health Services Review by Linda A. Griffin, Psych. R.N. II (indicating Petitioner's mental health score of 3);"SMI and Level of Service Determination Worksheet" completed by Jaime Whitford, Mental Health Therapist II, in March 2006 (same)).

II, wherein a diagnosis of "Depressive D/O NOS, Antisocial Traits" was indicated. In assessing four areas of Petitioner's functional criteria, Dr. Allinder made no indication that Petitioner, in the last six months, exhibited: (1) "Dysfunction in Role Performance: Impairment in the person's capacity to perform present major developmentally appropriate role functions vocationally, educationally, interpersonally and behaviorally in a correctional setting"; (2) "Inability to Live in General Population Without Supervision (Self-Care/Basic Needs)..." concerning hygiene and health; and/or (3) "Risk of Harm to Self or Others..." including acts of self harm. As to the fourth category, "Risk of Deterioration..." Dr. Allinder indicated that Petitioner did "not currently meet any one of the above functional criteria 1. through 3., but may be expected to deteriorate to such a level without treatment."[11] Although the form prompts the reviewer to indicate by check mark the reason supporting a finding of Risk of Deterioration, Dr. Allinder did not do so. She did assess Petitioner as "Low Need" and not qualifying for a diagnosis of serious mental illness.

- A November 18, 2004 "SMI Determination/Mental Health Needs Summary" form completed by Dr. Allinder. As reflected in a similar form completed by Dr. Allinder on May 18, 2004, Petitioner's diagnoses were Depressive Disorder Not Otherwise Specified and Antisocial Traits. In assessing four areas of Petitioner's functional criteria, Dr. Allinder made no indication that Petitioner, in the last six months, exhibited: (1) "Dysfunction in Role Performance..."; (2) "Inability to Live in General Population Without Supervision (Self-Care/Basic Needs)..."; and/or (3) "Risk of Harm to Self or Others...." As to the fourth category, "Risk of Deterioration...", Dr. Allinder

---

[11]Only those prisoners falling within any need level of the first and second categories or in the high need level of the third category would qualify for the SMI diagnosis. Those prisoners falling within the fourth category do not qualify for the SMI diagnosis.

indicated that Petitioner did "not currently meet any of the above functional criteria 1. through 3., but may be expected to deteriorate to such a level without treatment." To support this finding, Dr. Allinder checked a box stating: "Diagnostic Category I diagnosis with probable chronic, relapsing and remitting course." She assessed Petitioner as "Low Need" and not qualifying for a diagnosis of serious mental illness.

- A February 15, 2005 Continuous Progress Record indicating that Petitioner was involved in Bible studies and "legal work." His energy had been low the previous four or five days and he was sleeping very little. "'Young Inmates' on run–stress him." His last episode of suicidal ideation was in "[19]91-[19]92" and he had no current suicidal ideation. Petitioner was coherent, his thoughts were logical, he had no hallucination, paranoia, mania or panic episodes. Diagnosis was Axis I "DD NOS", Axis II "Antisocial traits". Prozac was prescribed.

- A March 15, 2005 Continuous Progress Record by Lisa Kaufman, MC, Psych. Assc. II, indicating "[f]ile review..." and " MH-3".

- An April 19, 2005 Mental Health Services Record Review by Linda A. Griffin, Psych. R.N. II, indicating that Petitioner "has a [history] of psychotropic medications being prescribed within the past 12 months" and that 14-day assessment would occur followed by another appointment. Petitioner's mental health score was assessed at 3.

- An May 13, 2005 Mental Health Services Record Review indicating that Petitioner had a history of psychotropic medications, i.e., "Prozac", being prescribed within the past 12 months and he was referred for a follow-up appointment with a psychiatrist.[12]

---

[12]Respondents indicate that the provider also placed a check mark next to the following form statements: "no significant mental health problems were evident" and "no

- A May 24, 2005 Psychiatric Progress Note indicating that Petitioner: was worried about his wife and mother because he had not heard from them; was sleeping better; had a good appetite; had fought with an inmate; and was spending his time reading and studying the Bible. He was oriented, cooperative, he spoke coherently and clearly, and his thought process was logical and goal-oriented. He had no hallucinations, paranoia, mania or current suicidal ideation. His affect was appropriate. Diagnoses included Depressive Disorder NOS and Antisocial Traits. Prozac was prescribed.

- A July 19, 2005 Psychiatric Progress Note by William Trimble, M.D., reflecting that Petitioner had anxiety concerning family and personal issues. He said that his wife was his main source of anxiety. Petitioner rated his depression at 8 out of 10 and said that it had decreased during the last 2 months. He had no current suicidal ideation. Dr. Trimble found that Petitioner's speech was coherent, his thought processes were logical with goal orientation, his mood was "stressed", and his insight and judgment were fair. Petitioner was continued on Prozac.

- An August 16, 2005 Psychiatric Progress Note by Dr. Trimble reflecting that Petitioner was in a better mood, was sleeping better, and had a good appetite. Dr. Trimble found that Petitioner was oriented, coherent, his thought processes were logical but his insight and judgment were limited. Petitioner reported anxiety caused by his wife's lack of support and he rated his depression as 4

mental health services are necessary at this time." (Surreply, p.10) (referring to "May 17, 2005" record, however, the date of the record appears to be May 13, 2005). While it is true that a check mark appears by each statement, the record also shows that a line has been drawn through both check marks and both bear the initials of the person who completed the form, whose name is illegible. Instead, the statements set forth in the Court's summary of this record reflects the statements by which the provider entered check marks that have not been crossed out.

out of 10. Dr. Trimble indicated that Petitioner had "few mood symptoms" and continued Petitioner on Prozac.

- A September 20, 2005 "SMI Determination/Mental Health Needs Summary" form completed by Dr. Allinder. The diagnosis was Depressive Disorder Not Otherwise Specified. Dr. Allinder's assessment this date was exactly the same as that rendered on November 18, 2004 which resulted in a finding that Petitioner fell within that category indicating a "Risk of Deterioration" in that he may expected to deteriorate without treatment, Petitioner was of "Low Need", and he did not qualify for a diagnosis of suffering from serious mental illness.

- A September 22, 2005 Mental Heath Services Record Review by Jaime Whitford, Mental Health Therapist II, indicating that Petitioner had a history of receiving psychotropic medication and mental health treatment in the past 12 months and had a history of suicide attempts, PTSD, and depression. Therapist Whitford also indicated that Petitioner had taken Paxil and Prozac.

- A November 15, 2005 Psychiatric Progress Note by Dr. Trimble indicating that Petitioner's activities included reading, studying the Bible, and writing. Dr. Trimble also indicated that Petitioner's concentration was good, he was alert, his speech, thought process, and perception were unremarkable, his mood was "relaxed [and] appropriate", his orientation and memory were intact, and his judgment was fair. Diagnoses were Depressive Disorder NOS, Antisocial Traits and Narcissistic. According to Dr. Trimble, Petitioner's status was unchanged and he was continued on Prozac.

- A February 1, 2006 Psychiatric Progress Note and Continuous Progress Record by Dr. Trimble reflecting Petitioner's comments that he was having problems with other inmates in his pod and in the yard. Petitioner reported taking his medication, which was effective and did not cause side effects. He reported that his mood was "Not OK" . Dr. Trimble indicated that Petitioner

was alert, he had fair concentration, insight and judgment, his memory and orientation were intact, and he was "able to laugh [and] joke." There was no change in Petitioner's status and he was continued on Prozac.

• A form captioned "SMI and Level of Service Determination Worksheet" completed by Therapist Whitford indicating that Petitioner was diagnosed as "Depressive d/o NOS..." on February 1, 2006.[13] Petitioner was assigned a mental health score of 3, had no serious mental illness, and Petitioner was not classified as a "Special Need", instead he was classified as having "Routine Need" of service.[14]

• An Arizona Department of Corrections "Mental Health Treatment Plan" prepared by Therapist Whitford indicating that Petitioner's initial staffing occurred on March 2, 2006 and diagnoses of Axis I: "Depressive d/o NOS" and Axis II: "A.S.P.D. and Narcicistic..." and Axis III: "Chronic pain; dizziness; Gastroreflux." Petitioner was compliant with prescribed "Psychotrocic [sic] Medications." Petitioner had no mental health alerts such as suicide attempts, self-mutilation, substance abuse, feigning/manipulations, violence or sexual assault. Petitioner's "Target Problem[]..." was "Mood Disturbance." He was not suffering from psychotic symptoms or cognitive

---

[13]The date of this form is partially blocked out by a stamp bearing the provider's name. However, it appears that the date may be March 2006.

[14]An inmate with a mental health score of 3 who is designated as having routine needs is considered "Moderate Need" in that he "requires placement in a prison complex...that has regular, full-time psychological and psychiatric staffing and services. Offender has a recognized need, or, there exists a *routine* level of need for MH treatment and/or supervision." Arizona Department of Corrections, *Objective Classification: Custody & Internal Risk Technical Manual,* pp. 34-35 (June 1, 2009) available at www.azcorrections.gov/classification/Classificationpublic_Manual_060309.pdf. *See also Thomas v. Baca,* 2006 WL 2547321, *5 (D.Ariz. Aug. 31, 2006). On the mental health scoring scale, a score of 1 represents "No Need" and a score of 5 represents an "Acute Need." *Id.*

- 23 -

defects. This same form reflects that Petitioner was evaluated again on April 2, 2007 and was determined to have "on going" mood disturbance which was "[s]table during this period." When Petitioner was evaluated the following year on April 14, 2008, it was determined that his mood disturbance was "on going."

- A March 2, 2006 Continuous Progress Record by Therapist Whitford reflecting Petitioner's report that he had been taking his medication and felt that it was helping him. Petitioner reported experiencing pains, dizziness and gastric reflux. He also complained about his wife and denied suicidal ideation. Therapist Whitford noted that Petitioner mumbled and stuttered. Therapist Whitford found Petitioner to be alert, focused, oriented, logical, of euthymic mood, and that Petitioner's thought process and affect were within normal limits. Petitioner was continued on his then current medication.

- A May 19, 2006 mostly illegible Continuous Progress Record reflecting Petitioner's prior diagnoses of Depression NOS, Antisocial Personality Traits and Narcissistic, and that Petitioner was experiencing nausea. The provider also noted that Petitioner was taking Prozac.

- An August 22, 2006 Continuous Progress Record by Michael Stumpf, M.D., indicating that Petitioner had been taking his medication which he found to be effective and without side effects. Petitioner stated that Prozac helped his mood and "keeps me stable." Dr. Stumpf found Petitioner to have good concentration, euthymic mood, unremarkable thought processes and perception, fair insight and judgment, and that his orientation and memory were intact. Petitioner was continued on Prozac.

- A February 14, 2007 Psychiatric Follow-Up Note reflecting that Petitioner was taking his medication which was effective and had no side effects. New stressors were difficulties with Petitioner's wife and marriage. Petitioner gave "[n]o reports of mood liability; feels controlled." Petitioner's memory and

orientation were intact, his concentration was good, his insight and judgment were fair, and perception together with his speech and thought processes were within normal limits. He was directed to "continue Fluoxetine."

- On February 14, 2007, Petitioner signed an "Informed Consent for Psychotropic Medications" which set forth the side-effects of "Fluoxetine or Prozac" prescribed to Petitioner.

- An April 2, 2007 Continuous Progress Record by Therapist Whitford reflects Petitioner's complaints about problems with his anger and another inmate. He denied being suicidal. Therapist Whitford found Petitioner to be alert, focused, logical, coherent, goal oriented, oriented, cooperative, of euthymic mood, and that his thought processes were within normal limits. Petitioner was continued on his medication.

- A June 21, 2007 Continuous Progress Record indicating that Petitioner had a history of depression and PTSD and that he had a better response to Paxil.

- On June 21, 2007, Petitioner signed an "Informed Consent for Psychotropic Medications" which set forth the side-effects of Paxil prescribed to Petitioner.

- A July 14, 2007 Psychiatric Follow-Up Note completed by John Lee, Psychiatrist. Dr. Lee found Petitioner was taking medication as prescribed with no side effects and he was symptom free. Petitioner's concentration was good, his perception, speech and thought process were within normal limits, his memory was intact, and he had no self-destructive ideation. He was continued on Paxil.

- A December 12, 2007 Continuous Progress Record indicating that Petitioner's chart had been reviewed "for return to clinic psychiatrist line on 12/14/07."[15]

---

[15]Respondents point out that this record and all subsequent records listed below were created after Petitioner filed the instant federal habeas Petition. (Answer, p.6 n.3).

- • A December 14, 2007 Psychiatric Follow-Up Note completed by John Lee, Psychiatrist. Dr. Lee found Petitioner was taking medication as prescribed with no side effects and he was symptom free. Petitioner's concentration was good, his perception, speech and thought process were within normal limits, his memory was intact, and he had no self-destructive ideation. He was continued on Paxil.

- • An April 4, 2008 Psychiatric Follow-Up Note completed by Dr. Lee who found Petitioner was taking medication as prescribed with no side effects. Petitioner's concentration was good, his judgment was fair, his memory was intact, and he had no self-destructive ideation. He was continued on Paxil.

- • An April 14, 2008 Continuous Progress Record completed by Therapist Whitford indicating Petitioner's report that he was compliant with his medication, would soon be starting culinary classes, and he was not suicidal. Therapist Whitford found Petitioner to be alert, focused, logical, coherent, goal oriented, of appropriate affect and of euthymic mood. Petitioner's manner and stream of speech, tone and thought processes were within normal limits.

- • A July 8, 2008 record indicating that Petitioner's psychiatric appointment was rescheduled.

- • A July 16, 2008 Continuous Progress Record wherein Petitioner indicated he had received "a letter", which presumably was the Court's Order, requiring information concerning his mental health treatment and "that has me stressed out a little." He had been taking culinary classes and studying the scriptures, he had been compliant with psychiatric medications and denied suicidal or homicidal ideation. J. Cohen, PRN II, found Petitioner to be calm, cooperative, of euthymic mood, logical and coherent.

- • A July 21, 2008 Continuous Progress Record indicating that Petitioner discussed the Court's Order requiring information concerning his mental health treatment. Petitioner reported that he had been attending culinary

school since April, he was studying scriptures, he was not suicidal, and he had applied for several jobs. Therapist Whitford found Petitioner to be alert, focused, cooperative and that his tone, rate and manner of speech and thought process were within normal limits. Petitioner's affect was appropriate and his mood was euthymic.

In sum, the record reflects that Petitioner reported that in 1991 or 1992 he attempted suicide. The record reflects that Petitioner has a history of PTSD, depressive disorder, and antisocial traits and that he has consistently taken medications such as Paxil or Prozac for these conditions. The submitted records reveal that during the relevant AEDPA limitations period, which expired on April 3, 2006, Petitioner was repeatedly described as being alert, coherent, logical and goal-oriented in his thought processes, oriented as to person, time, place and situation, involved in Bible study, and in February 2005 he was also involved in "legal work." He did not suffer from hallucinations, paranoia, nor did he have manic episodes. He also reported that he was taking his medication as prescribed, that it was effective and he did not suffer side effects. More than one court has noted that "'the fact that petitioner has been receiving psychotropic medications 'would actually weigh more in favor of his being able to function than not.'" *Brown,* 232 F.Supp.2d at 768 (*quoting Williams v. Price,* 2002 WL 551037, *5 (E.D. Mich. March 29, 2002)).

The record reflects that Petitioner was able to represent himself at a three-day evidentiary hearing during his of-right PCR proceeding in 2004. Petitioner was also able to commence several state post-conviction relief proceedings during the time that he alleges that his mental illness prevented him from complying with the AEDPA statute of limitations. In fact, Petitioner filed his Third and Fourth PCR proceedings while the AEDPA statute of limitations was running.

Respondents also aptly point out that "even though Petitioner presently takes the same medications for his diagnosed conditions that he received during the period he seeks to toll..., the administration of these drugs did not prevent him from: (1) responding to this Court's Order by asking prison officials for the medical reports he submitted on August 20, 2008...;

and (2) seeking an extension of this Court's deadline when Petitioner recognized an impending delay in the provision of the records at issue." (Surreply, p. 18).

The Ninth Circuit has affirmed a district court's refusal to apply equitable tolling in a case, like the instant case, where the petitioner, despite his claims of mental illness, had prepared and filed petitions with the state court immediately before the commencement of the AEDPA statute of limitations as well as a few months following expiration of the limitations period. *Gaston,* 417 F.3d at 1034-35. Like the petitioner in *Gaston,* the instant Petitioner was able to complete various filings in the state court prior to commencement of the AEDPA statute of limitations[16], while that period was statutorily tolled[17], and also while that period was running.[18] He also completed state filings after the limitations period had expired and before he filed the instant federal Petition.[19] Like *Gaston,* there is no suggestion in the record that Petitioner's condition was significantly worse during the AEDPA limitations period than his condition immediately before or after that period. *See Id.* at 1035. On the instant record, Petitioner herein has failed to establish exceptional circumstances that would justify equitable tolling on the basis of mental incapacity. *See Gaston,* 417 F.3d at 1034-1035; *Brown,* 232 F.Supp.2d at 768 ("The exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity.").

---

[16]Petitioner filed his *pro se* of right PCR Petition and represented himself at a three-day evidentiary hearing on this matter in 2004.

[17]During this time, Petitioner pursued his May 13, 2005 Second PCR Petition.

[18]During this time, Petitioner filed: (1) an August 24, 2005 motion for extension of time to file a petition for review of the trial court's denial of his Second PCR Petition; (2) his September 20, 2005 Third PCR Petition; (3) an September 29, 2005 petition for review; and (4) his March 15, 2006 Fourth PCR Petition.

[19]During this time, Petitioner filed: (1) a May 1, 2006 petition for special action; (2) an April 2, 2007 Fifth PCR Petition; and (3) a May 3, 2007 special action.

Petitioner also claims that he relied on "other inmates to help me argue and write [sic] research of my legal case." (Reply, Exh. 1; *see also* Reply, p.2 ("[P]etitioner relied on other people to help him file his *pro se* briefs..." in the state and federal courts and "to know the Rules of Court and the correct filings of his petitions....")). Petitioner has not alleged facts which would justify equitable tolling based upon his reliance on other inmates. Mistakes by jailhouse lawyers generally do not provide a basis for equitable tolling. *See United States v. Cicero,* 214 F.3d 199, 204-05 (D.C. Cir. 2000) (no equitable tolling warranted where petitioner "gave his legal papers to a jailhouse lawyer whose placement in segregation separated [petitioner] and his papers..." in light of the petitioner's lack of diligence to pursue a timely filing); *Marsh v. Soares,* 223 F.3d 1217, 1220-21 (10th Cir. 2000) (noting that the petitioner "chose to rely upon assistance from the prison legal access attorney and an inmate law clerk..." and holding that "[t]he fact that an inmate law clerk was assisting in drafting the state petition does not relieve [the petitioner] from the personal responsibility of complying with the law."); *Paige v. United States,* 171 F.3d 559, 561 (8th Cir. 1999) (no equitable tolling warranted where the petitioner "decided to count on someone in another prison to draft his motion and mail it to him through the prison and U.S. mail systems, he voluntarily took the risk of a late delivery."); *Henderson v. Johnson,* 1 F.Supp. 2d 650, 655, (N.D. Tex. 1998) ("Inmates who assist other prisoners with legal matters are not subject to the ethical and fiduciary obligations of lawyers. If their miscreant, inept, or negligent conduct were deemed sufficient of itself to toll the AEDPA limitations period, the time-bar would be rendered virtually meaningless."); *Brissette v. Herndon,* 2009 WL 1437822 (C.D. Cal. May 21, 2009) ("It cannot be deemed extraordinary that jailhouse lawyers might make errors in their representation of fellow inmates.") *Gallegos v. Carey,* 2008 WL 4078731 (E.D. Cal. Aug. 29, 2008) ("It is simply not extraordinary that jailhouse lawyers might give bad advice or work less diligently than they should."), *report and recommendation adopted,* 2008 WL 4372443 (E.D. Cal. Sept. 24, 2008); *Lemos v. Marshall,* 2008 WL 4410151, *4 (C.D. Cal. Aug. 21, 1008) ("entrusting his record transcripts to fellow inmates hardly qualifies as an extraordinary circumstance beyond petitioner's control. Rather, entrusting his transcripts to

fellow inmates and thereby assuming the risk the transcripts could be misplaced or lost was a matter entirely within petitioner's control."). *Cf. Tacho v. Martinez,* 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon allegedly incompetent jailhouse lawyer does not constitute "cause" for procedural default). Petitioner is not entitled to equitable tolling of the AEDPA limitations period based upon his reliance on advice from other inmates.

Under the instant circumstances, Petitioner has failed to establish that equitable tolling of the AEDPA statute of limitations is warranted.

## III.    CONCLUSION

The AEDPA limitations period in Petitioner's case expired on April 3, 2006. Petitioner did not file the instant Petition for Writ of Habeas Corpus until November 18, 2007–over one year after expiration of the AEDPA statute of limitations. Consequently, Petitioner's Petition for Writ of Habeas Corpus is untimely filed and barred from federal court review. Because the Petition is untimely, the Court need not address Respondents' alternative argument that all of Petitioner's claims are procedurally defaulted.

## IV.    RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, dismiss Petitioner's Petition for Writ of Habeas Corpus. (Doc. No. 1).

Pursuant to 28 U.S.C. §636(b), an party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CV 07-8131-PCT-JWS.** A party may respond to another party's objections within ten days after being served with a copy thereof. *See* Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 20th day of November, 2009.

Héctor C. Estrada
United States Magistrate Judge